IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHARLES ALONZO TUNSTALL, )
)
Plaintiff, )
)
v. ) 1:15CV226
)
FRANK L. PERRY, et al., )
)
Defendants. )

MEMORANDUM OPINION, ORDER, AND RECOMMENDATION

This prisoner civil rights action comes before the Court on Defendant Peter Woglom's Motion to Dismiss and in the Alternative for Summary Judgment [Doc. #30], and Defendant Carmen Hendricks' Motion to Dismiss [Doc. #45]. Plaintiff is proceeding *pro se* in this 42 U.S.C. § 1983 action and has responded to Defendants' Motions. Plaintiff has also filed a Motion [Doc. #26] requesting reissuance and service of unserved summonses, and a Motion [Doc. # 28] seeking an Order compelling production of the unserved Defendants' last known addresses and seeking service of process on such Defendants. For the reasons stated below, the Court will recommend that Defendants Woglom's and Hendricks' Motions be granted. The Court will deny as moot Plaintiff's Motion related to the service of process of unserved Defendants where the Clerk's office has already issued new summonses. As to Plaintiff's Motion seeking the unserved Defendants' last known addresses, the Court will grant the Motion to the extent noted herein.

I.      BACKGROUND

Plaintiff, a North Carolina state inmate who was incarcerated at various state correctional facilities during the time period relevant to this case, brings the instant action alleging unconstitutional denial of adequate medical treatment. (Compl. [Doc. #2].) Plaintiff has named as Defendants Frank L. Perry, Secretary of the North Carolina Department of Public Safety ("DPS"), as well as the following institutional medical providers and officers: Dr. Charles Stewart, Beverly Stubbs, Peter Woglom, Dr. Arthur Davis, Dr. Sami Hussein, "Welch," Dr. Samuel Micklos, "Ms. Padgeant," Letitia Owens, "Captain Brockington," "Ms. Falcon," Paula Y. Smith, "Dr. Keyser," and Carmen S. Hendricks. (Compl. [Doc. #2] at 2-3.[1])

The Court recites the following facts as alleged in Plaintiff's Complaint. Plaintiff has "continuously for several years" suffered from chronic gastrointestinal problems, including "profuse colon-rectal bleeding" and "severe inner and outer hemorrhoids." (Id. at 4 ¶¶ 1, 3.) He suffered from these problems while incarcerated at Scotland Correctional Institution and Bertie Correctional Institution, but his treating physicians there "prescribed no appropriate/corrective treatment," despite his worsening condition. Plaintiff was subsequently transferred to Warren Correctional Institution where the treating physician, Defendant Dr. Arthur Davis, prescribed enemas to treat Plaintiff's "fecal impaction problem," although this treatment "failed to correct [Plaintiff's] continuing problem." Plaintiff was later transferred to Central Prison Hospital for evaluation and treatment. However, the treating physician was "unable to treat [Plaintiff's] medical ailments" because Defendant Falcon, the

---

[1] Citations to the Complaint are to the page numbers assigned by the CM/ECF system.

transfer officer, and Defendant Letitia Owens, "failed to assure that [his] necessary medical records accompanied [him] to the scheduled appointment."

Plaintiff was transferred to Lumberton Correctional Institute while suffering from these medical issues. There, he "was not permitted by [Defendant] Capt. Brockington to declare a medical emergency," and was thereafter disciplined and placed in punitive segregation. He was transferred to Scotland Correctional Institution in "intensive control" status.

Plaintiff alleges that Defendant Dr. Sami Hussein "denied [Plaintiff] medical treatment from 05-26-10 and 01-12-12 when sought at the Lanesboro [Correctional Institute], and at other times." Also while incarcerated at the Lanesboro Correctional Institute, Defendant Dr. Hussein and Defendant Nurse Welch "denied [Plaintiff] meaningful access to appropriate medical attention and treatment."

Between January 2012 and January 2013, Plaintiff continuously requested that an institutional physician conduct a proper medical examination of him so that he could obtain a "prognosis pertaining to [his] well-documented gastrointestinal-digestive-colonospic ailments." (Id. at 5 ¶ 8.) Plaintiff also sought "surgical removal of chronic bleeding and painful hemorrhoids." Although Defendant Nurse Padgeant was aware of Plaintiff's medical issues, she "failed to initiate corrective measures." Defendant Dr. Micklos denied Plaintiff corrective surgery. Finally, despite Plaintiff having informed Defendant Paula Smith, DPS Medical Director, of his medical issues and denial of treatment, she "passive[ly] acquiesce[d]" to the "misconduct" of the institutional medical providers.

In sum, Plaintiff alleges that "[a]ll named defendants . . . have participated – and continue to participate – in the ongoing deprivation of [his] constitutional right to medical attention and treatment . . . ."

II.    LEGAL STANDARD

In considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must consider whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (internal citations omitted). Thus, dismissal of a complaint is proper where a plaintiff's factual allegations fail to produce an inference of liability strong enough to "nudge[] [the plaintiff's] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 547. Further, while the Court must construe the allegations of a *pro se* complaint liberally, the plaintiff is nevertheless required to plead sufficient facts "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.

III. DISCUSSION

    a. Defendant Peter Woglom's Motion to Dismiss and in the Alternative for Summary Judgment

In his Motion to Dismiss, Defendant Woglom first argues that Plaintiff has failed to state a plausible claim against him. (Def. Woglom's Br. [Doc. #31] at 6.) Defendant Woglom notes that Plaintiff "does not name [him] and does not specifically attribute any alleged action and/or inaction to [him] in [the] entire Complaint." (Id. at 3.) Defendant Woglom is only named in the "Parties" section of the Complaint, identified as a "physician's extender" at Bertie Correctional Institution. In response, Plaintiff argues that his Complaint clearly refers to Defendant Woglom when he alleges that the "treating physician" at Bertie Correctional Institution ("Bertie") "prescribed no appropriate/corrective medical treatment." (Pl.'s Resp. [Doc. #36] at 2-3.)[2]

Having considered these contentions, the Court notes first that the Complaint's reference to the "treating physician" at Bertie does not reasonably identify any involvement by Physician Assistant Woglom, and by failing to allege Defendant Woglom's personal involvement in the alleged deprivation of necessary medical treatment, Plaintiff has failed to state a claim against him. See Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985) (noting that "[i]n order for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights."); Hubbard v.

---

[2] The Court notes that in his Response, Plaintiff also quotes a factual allegation in which he specifically addresses Defendant Woglom's personal involvement in the facts underlying this case. (Pl.'s Resp. [Doc. #36] at 3.) However, it appears that Plaintiff is citing a Complaint from a separate action he has filed against Defendant Woglom in the Eastern District of North Carolina. In particular, Plaintiff refers to "the Complaint filed in this case on December 28, 2015." (Id. at 5.) However, Plaintiff filed the Complaint in this action on March 13, 2015. Plaintiff may not rely on factual allegations in a Complaint filed in a separate action in another district in order to show that he has stated a plausible claim in the instant action.

5

Carlton, No. CIV.A. 7:07CV00021, 2007 WL 4190935, at *2 n.4 (W.D. Va. Nov. 21, 2007) (stating that "[a] complaint that lacks specific factual allegations concerning a defendant's personal involvement should be dismissed.").

Moreover, even accepting Plaintiff's argument that the Complaint's reference to the "treating physician" at Bertie sufficiently identifies Physician Assistant Woglom, Plaintiff has failed to adequately allege that the "treating physician" at Bertie was deliberately indifferent to his serious medical need. To state a plausible Eighth Amendment claim for lack of proper care or inappropriate medical treatment, Plaintiff must allege that Defendants acted with "deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "'[D]eliberate indifference entails something more than mere negligence . . . .' It requires that a prison official know of and disregard the objectively serious condition, medical need, or risk of harm." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995) (quoting Farmer v. Brennan, 511 U.S. 825, 835 (1994)). A disagreement between the prisoner and prison officials over proper medical treatment is insufficient to state a § 1983 claim. See Wright, 766 F.2d at 849. In the instant case, Plaintiff alleges that while he was at Bertie Correctional Institution, the treating physician at Bertie "prescribed no appropriate/corrective treatment," and that his condition worsened while he was there. (Compl. at 4 ¶ 3.) This allegation alone is insufficient to state a plausible claim that the treating physician at Bertie was deliberately indifferent to Plaintiff's serious medical need. Specifically, Plaintiff has failed to allege any facts permitting a plausible inference that the treating physician at Bertie knew of and disregarded Plaintiff's medical problems.

6

In his Response to the instant Motion, Plaintiff attached his affidavit in which he provides more detail regarding Defendant Woglom's involvement in his medical treatment. (Pl.'s Aff. [Doc. #35-1].) Courts "generally do not consider materials other than the complaint and documents incorporated into it when evaluating that complaint under Rule 12(b)(6) . . . ." Braun v. Maynard, 652 F.3d 557, 559 n.1 (4th Cir. 2011). Here, even if the Court allowed Plaintiff to augment his Complaint with the allegations contained in his affidavit, Plaintiff would still fail to state a claim against Defendant Woglom. In his affidavit, Plaintiff details eleven specific "services-treatments" that Defendant Woglom actually provided to Plaintiff, including "1) fecal cultures, 2) digital examination, 3) blood tests, 4) RAST test, 5) re[te]ntion on 3000 calories high fiber diet with Ensure and snack, 6) Colace, 7) medi-pads for chronic bleeding hemorrhoids, 8) Metamucil fiber supplement, [and] 9) Lactulose solution for liver-colon problems." (Pl.'s Aff. at 2.) According to Plaintiff, Defendant Woglom asked Plaintiff "whether [he] had been seen or treated by a hepatologist once [Plaintiff] raised the subject," and Defendant Woglom told Plaintiff that he would "fax Raleigh to obtain a complete copy" of his medical record. "Shortly thereafter, [Plaintiff] was abruptly transferred from Bertie to Warren Correctional Institution." (Pl.'s Aff. at 2-3.) Plaintiff complains that "no hepatology clinic or treatment, was ever ordered for or provided to" Plaintiff, despite Plaintiff "informing [Defendant Woglom] of [Plaintiff's] need for such treatment." (Pl.'s Aff. at 2-3.) Plaintiff apparently contends that Defendant Woglom should have ordered a "hepatology clinic or treatment" even after Plaintiff was transferred to a different facility and was no longer in his care. Rather than alleging facts to establish that Defendant Woglom ignored Plaintiff's medical needs, Plaintiff's affidavit indicates that Defendant Woglom was responsive to Plaintiff's

7

medical condition and was actively engaged in his treatment. At most, Plaintiff has alleged that Defenant Woglom was negligent, which is insufficient to establish a violation of the Eighth Amendment. Further, to the extent Plaintiff disagreed with the treatment provided, such disagreement does not provide a basis for a § 1983 claim. See Wright, 766 F.2d at 849.

Based on the foregoing, the Court will recommend that Defendant Woglom's Motion to Dismiss be granted.[3]

### b. Defendant Carmen Hendricks' Motion to Dismiss

Defendant Hendricks, like Defendant Woglom, argues that Plaintiff's claim against her should be dismissed for failing to allege her personal involvement in the underlying events. (Def. Hendricks' Br. [Doc. # 46] at 9.) Plaintiff has only named Defendant Hendricks in the "Parties" section of his Complaint, identifying her as a "physicians extender" at Scotland Correctional Institution. In his Response, Plaintiff suggests that the general allegations against medical personnel at Lumberton and Scotland Correctional Institutions ("Lumberton" and "Scotland"), where Defendant Hendricks was employed as a physician's assistant, apply equally to Defendant Hendricks. (Pl.'s Resp. [Doc. # 49] at 3-5 and n.1.)[4] Specifically, Plaintiff states that Defendant Hendricks "was intricately involved in the stated actions even though

---

[3] The Court notes that Defendant Woglom also filed his Motion in the alternative for summary judgment based on the statute of limitations. (Def. Woglom's Br. [Doc. # 31] at 13.) Defendant Woglom, applying a three-year limitations period, argues that he last treated Plaintiff more than five years before Plaintiff filed the instant Complaint. (Id. at 14.) In Response, Plaintiff does not dispute this, but rather argues that later alleged violations against other medical providers "relate[] back to . . . Plaintiff's tenure at Bertie." (Pl.'s Resp. [Doc. # 36] at 4.) However, Plaintiff provides no authority for his position, and it appears that the statute of limitations would provide an additional ground for dismissing Plaintiff's claims against Defendant Woglom.

[4] In his Response, Plaintiff also argues that his Complaint does identify Defendant Hendricks by name and allege her personal involvement. However, Plaintiff again appears to cite allegations against Defendant Hendricks from a Complaint which was not filed in this action. (Pl.'s Resp. [Doc. #49] at 5.)

8

her name . . . is not repetitiously and redundantly used to distinguish her every action and failure to act." (Id. at 5.)

The Court finds that Plaintiff's allegations against other medical providers at Lumberton and Scotland are insufficient to allege that Defendant Hendricks had any personal involvement in the alleged constitutional violations. That is, the Complaint contains no allegation that Defendant Hendricks knew of and ignored Plaintiff's serious medical condition. Accordingly, Plaintiff's claim against Defendant Hendricks should be dismissed for failing to allege that she was personally involved in the alleged deliberate indifference to Plaintiff's serious medical needs.[5]

   c. Plaintiff's Motions

Plaintiff has filed a Motion [Doc. #26] requesting reissuance and service of unserved summonses. In that Motion, Plaintiff seeks to have the U.S. Marshal Service re-serve revised summonses on Defendants Captain Brockington and Carmen Hendricks. The Court notes, however, that this Motion has been mooted by the Clerk's subsequent reissuance of the revised summonses as requested on January 7, 2016 [Doc. #29].

Plaintiff subsequently filed a second Motion [Doc. #28], seeking a Court order requiring counsel for the State of North Carolina to provide under seal the last known

---

[5] Defendant Hendricks also seeks dismissal of the Complaint based on Plaintiff's failure to exhaust his administrative remedies. Having found that Plaintiff failed to state a claim against Defendant Hendricks, the Court need not reach that argument. Similarly, in her Reply, Defendant Hendricks asserts that any claims against her related to the time period from 2003 to 2008 while Plaintiff was housed at the Scotland Correctional Institution would be barred by the statute of limitations. The Court notes that the statute of limitations would appear to bar such claims, but because Plaintiff has not made any claims directly as to Defendant Hendricks, the Court cannot determine what the basis of the purported claims may be. Thus, the Court need not reach the statute of limitations issue, and the claims should be dismissed for failing to state a claim as to Defendant Hendricks.

9

addresses of seven Defendants whose original summonses were returned unexecuted. (See "List of Unserved Defendants" [Doc. #28] at 4; Unexecuted Summonses [Doc. #18].) Plaintiff has identified the unserved Defendants as Dr. Sami Hussein, Dr. Charles Stewart, Dr. Keyser, Ms. Padgeant, Dr. Micklos, Dr. Arthur Davis, and Ms. Welch. (List of Unserved Defendants [Doc. #28].) The Court notes that the summons reissued as to Captain Brockington was returned unexecuted on March 7, 2016, [Doc. #40], and thus he also remains unserved. Plaintiff requests that the unserved Defendants be re-served at the addresses provided by counsel for the State. In considering this request, the Court notes that it may be "'unreasonable to expect incarcerated and unrepresented prisoner-litigants to provide the current addresses of [prison personnel] who no longer work at the prison.'" Murray v. Pataki, 378 F. App'x 50, 52 (2d Cir. 2010) (quoting Richardson v. Johnson, 598 F.3d 734, 739-40 (11th Cir. 2010)); see also Henderson v. Edwards, No. 1:11CV445, 2012 WL 1340860, at *5 (M.D.N.C. Apr. 18, 2012) (observing same). In this regard, "the Court remains under a duty to assist Plaintiff with regard to service of process in view of his *pro se* status and the granting of leave to proceed *in forma pauperis*." Kaminski v. Wake Forest Univ. Baptist Med. Ctr., No. 1:08CV882, 2009 WL 3208449, at *5 (M.D.N.C. Sept. 30, 2009).

Other courts facing similar situations have requested that counsel for the defendants - typically a representative of the attorney general's office - assist with service of process. See, e.g., Ravenell v. Corizon Med. Servs., No. ELH-13-203, 2014 WL 470062, at *2 n.1 (D. Md. Feb. 5, 2014) (ordering Assistant Attorney General to provide last known home or business address, or a statement regarding why those addresses are not available, and directing that material to be placed immediately under seal); Murray v. Keller, No. 5:10-CT-3038-FL, 2011

10

WL 4443143, at *3 (E.D.N.C. Sept. 23, 2011) (ordering the North Carolina Attorney General to provide, under seal, the full name and last known address of defendant); Norwood v. Woodford, No. 07-CV-0057-WQH, 2007 WL 4557793, at *1 (S.D. Cal. Dec. 26, 2007) (ordering Deputy Attorney General to provide addresses for defendants to U.S. Marshal in a confidential memorandum).

In this case, a Special Deputy Attorney General for the State of North Carolina has entered an appearance as counsel of record for several of the named Defendants. (Notice [Doc. #51].) The unserved Defendants appear to all have been employed in various state correctional facilities at times relevant to Plaintiff's claims. No party has filed a response objecting to Plaintiff's request. In these circumstances, the Court will require counsel from the North Carolina Attorney General's Office to make a good faith effort to obtain the last known addresses of the unserved Defendants, including Captain Brockington, and, if able, to file that information, under seal, with the Court for service of process purposes only. Should counsel remain unable to obtain that information, counsel should provide a statement under seal outlining the efforts made and any information that is available. Alternatively, counsel may obtain authorization from the unserved Defendants to accept service of process on their behalf, or the unserved Defendants may waive service of process.

IV. CONCLUSION

IT IS THEREFORE RECOMMENDED that Peter Woglom's Motion to Dismiss [Doc. # 30] and Carmen Hendricks' Motion to Dismiss [Doc. #45] be GRANTED, and that the claims as to these Defendants be dismissed without prejudice.

IT IS FURTHER ORDERED that Plaintiff's Motion [Doc. #26] requesting reissuance

and service of unserved summonses is DENIED as moot, and Plaintiff's Motion [Doc. #28] seeking an Order compelling production of unserved Defendants' last known addresses and service of process on such Defendants is GRANTED to the extent that counsel from the North Carolina Attorney General's Office shall make a good faith effort to obtain the last known addresses of the unserved Defendants and file that information under seal with the Court, or, if unable to obtain that information, provide a statement under seal outlining the efforts made and any information that is available; alternatively, counsel may obtain authorization from the unserved Defendants to accept service of process on their behalf, or the unserved Defendants may waive service of process.

This, the 3rd day of August, 2016.

/s/ Joi Elizabeth Peake
United States Magistrate Judge